# Tyson *v.* The South & North Alabama Railroad Company.

*Action against Railroad Corporation to recover Damages for Personal Injuries suffered by Employe.*

1. *Corporation; what duty owes employes, in selection of fellow-servants.*—A railroad corporation owes a duty to its employes, to exercise due care and diligence in the selection and appointment of their fellow-servants, and is answerable for injuries resulting from its want of care or skill, in these respects; though if these have been observed, it is not responsible to one servant, for injuries resulting from the negligence of his fellow-servant.

2. *Same; delegation of power of appointment, effect of.*—Whoever exercises the power of appointing and removing employes or servants, though his grade of employment as to other matters, makes him their fellow servant, exercises a corporate function; and though he be ever so competent himself, and due care has been exercised in selecting him for that purpose, his negligence or mistakes in selecting employes, are the negligence or mistakes of the corporation, for which it must answer.

Appeal from Montgomery Circuit Court.

Tried before Hon. JAMES Q. SMITH.

The appellant, Samuel Tyson, brought this action against the appellee, the South and North Alabama Railroad Company, to recover damages for personal injuries sustained while in its service, by reason of the negligence of defendant in appointing as engineer one Lovelace, an incompetent and unfit person, by whose carelessness and unskillfulness·

plaintiff's leg was caught and injured while engaged in coupling cars.

The evidence showed that plaintiff was engaged in the service of defendant as a car coupler, and that while thus engaged, he received the injuries complained of. There was evidence tending to show that plaintiff was injured, without fault on his part, by reason of the negligence or ignorance of the engineer, one Lovelace, who was in charge of the engine; though there was also evidence tending to show that plaintiff was not without fault. "On the night when the injury occurred, the regular night engineer was excused for sickness, and the regular day engineer complained of being tired, and thereupon the yard master of defendant, one Hunt, who was invested with authority to appoint and remove engineers at will, and who was proved to be a competent and skillful man for his position, put one Lovelace in charge of the engine, without the consent or knowledge of plaintiff," and while said Lovelace was thus in charge of the engine, without plaintiff's knowledge or consent, plaintiff was injured, as above stated, by said Lovelace's ignorance or negligence.

Several witnesses testified that they had known Lovelace for several years, during all of which time he had been a fireman; that they had never known or heard of his having had charge of an engine before, though it was possible that he might have acted as engineer during part of that time, without their knowing it. Lovelace had been in service of defendant for four or five months as a fireman, and the day after the accident, returned to duty as a fireman, and so continued until he left defendant's service. The foregoing was all the evidence as to the competency or incompetency of Lovelace as an engineer.

The court charged the jury, if they found from the evidence that "at the time of the injury complained of, plaintiff was an employe of the defendant as a coupler of railroad cars, and that Hunt was also an employe of said defendant, authorized to discharge and employ engineers, and you find further, that Hunt employed Lovelace to direct the engine used in coupling cars, and it appears from the evidence the injury complained of, was the result of negligence, want of due care and skill on the part of Lovelace, which want of skill in Lovelace was not known to defendant, then I charge you that the plaintiff ought not to recover."

To this charge plaintiff duly excepted.

At the request of defendant, the court gave the following charge: "If the jury believe from the evidence, that the

South and North Alabama Railroad Company employed an experienced yard master, whose duty it is to select engineers and the like, in the operation of the trains and in prosecution of the business of defendant, and that said yard master made a mistake, or did not use proper diligence in the selection and appointment of the man Lovelace, through whose alleged negligence the plaintiff, (an employee of the defendant corporation), was injured, the negligence or mistake of said yard master, unknown to the defendant, is not, as to the plaintiff, the negligence of the corporation.  Such mistake or negligence in that regard are the negligence of a servant in the course of his employment, and is within the meaning of the rule which forbids a recovery against the master for injuries done to a servant by the negligence of his fellow-servant; and if the jury believe this state of facts, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant."   To the giving of this charge, the plaintiff also accepted, and now assigns the giving of these charges for error.

ARRINGTON & GRAHAM, and C. W. FERGUSON, for appellant.

RICE, JONES & WILEY, *contra.*

STONE, J.—In the case of *The Mobile and Montgomery Railroad Co. v. Smith,* 59 Ala. 245, we decided that Jordan, the superintendent of the road, and O'Brien, the supervisor of that part of the road, on which the injury complained of was done, were fellow-servants of Smith, the brakeman, who was plaintiff in that suit.   In that case we said : "It is proved that Jordan, the superintendent, O'Brien, the road supervisor, Price, a section master to whom blame is ascribed, and Mitchell, the engineer of the train, were all of them competent, prudent, and experienced in the several duties to which they were respectively appointed.   These were all the persons in any way chargeable with the mishap, who were concerned in the service."   The fault which led to the injury complained of, was chargeable to one or more of the above named employees or servants of the railroad corporation.   But the fault was committed in that case by one or more of the servants aforesaid, while they and Smith were acting in the common business of the same master, the railroad corporation.   We held that the railroad was not responsible in that case for injury done the plaintiff, by the negli-

[Tyson v. South & North Ala. R. R. Co.]

gent performance of duty by a fellow-servant. That case was distinguished from *Walker v. Bolling*, 22 Ala. 294; and the principle announced in the older case was not intended to be impaired. In the later case we said: "In *Walker v. Bolling*, this court held that where there is a general manager or superintendent, who is invested by the common employer with the duty and authority of employing and dismissing the inferior agents and servants who are under him, the master is responsible for acts of negligence on the part of the superintendent in failing to exercise due care and diligence in the employment of competent agents, or in not dismissing those who are proved to be incompetent." The distinction may appear to be a narrow one, but we think it is founded in solid reason. In the one case the servant simply performs the labor assigned him. He has no authority or power to sublet, or delegate the service to another. If his principal, the railroad corporation, has selected him with care; if he possess the requisite skill, qualifications and good character, then the corporation, which speaks and acts through its officials, has done its duty, and will not be held to account to another servant or employe for any injury that may have resulted from the fault or negligence of such accredited first mentioned employe. Such is the weight of authority, and such are our decisions. We have no desire to overturn them.—*M. & O. R. R. Co. v. Thomas*, 42 Ala. 672. In the case cited, our predecessors used the following language: "There are perils incident to the servant's employment, against which caution and prudence can not perfectly guard. Those perils and risks the servant must be presumed to know as well as the master, and when he contracts, he must be understood to assume them, and stipulate for a compensation apportioned thereto. It is in this that the relation of a railroad corporation to passengers differs from its relation to servants. The principle has been so often declared, both in England and in this country, that it has ceased to be disputable." See, also, the authorities collected and collated in the able opinion in that case.

But the question we have been discussing is not the question in this case. The bill of exceptions states "that on the night when the injury occurred, the regular night engineer was excused for sickness, and the regular day engineer complained of being tired, and thereupon the yard master of the defendant, who was invested with authority to remove and appoint engineers at will, and who was proved to be a competent and skillful man for his position, put one Love-

lace in charge of the engine, without the consent or knowledge of the plaintiff; and while said Lovelace was, without plaintiff's knowledge, acting as engineer, and by reason of the ignorance or negligence before stated, plaintiff was hurt." There was testimony tending to show that Lovelace was not a competent engineer. It appears then that part of the administrative functions of the corporation were confided to sub-agents and employes. Such practice may be, and probably is, necessary, in the control and government of so large a corporation as a railroad usually is. But, the performance of such delegated power by the sub-agent or employes is the act of the corporation, and the corporation is responsible for its faithful and prudent performance, to the same extent as if the service were performed by the highest officer of the corporation. The selection and removal, at will, of engineers in control of locomotives, is a high and responsible function, and the consequences of errors, or misplaced confidence therein, are too fearful to be lightly passed over. The railroad corporation must not only have a competent and skillful man for this position, but he must prove his competence and skill by selecting competent and skillful persons to execute his orders. Failing to do so, the railroad corporation he represents is accountable for the injury resulting from such failure. This, we understand, is the result of the principle declared in *Walker v. Bolling, supra*, which was reaffirmed in *Cook v. Parham* 24 Ala. 21. Speaking on this question, Chief-Justice WALKER, in *M. & O. R. R. Co. v. Thomas*, said : " The master is answerable that the servants shall be persons of ordinary skill and care. This qualification has been twice announced in this State. The precise shape of its statement is, that it is the master's duty to use due care in procuring competent servants or officers, and he is responsible for a failure to discharge that duty. With this qualification the rule above stated, which prevails in England, must be regarded as established in this State." The rule referred to is, that the master is not responsible to one servant for injury caused by the fault or negligence of another. And so we hold that while the railroad company is not responsible to Tyson for injuries which he sustained by the fault or neglect of Lovelace, provided the latter was a competent and skillful engineer, yet, if he was not competent and skillful, then the corporation is responsible to Tyson for any injury that resulted from such want of competence and skill.

[Mobile & Montgomery Railway Co. v. Steiner, McGehee & Co.]

The rulings of the Circuit Court were not in harmony with the views above expressed.

Reversed and remanded.