# Wadsworth Red Ash Coal Co. *v.* Scott.

### Injury to Servant.

(Decided June 30, 1916.   72 South. 542.)

1. **Bill of Exceptions; Establishing; Supreme Court.**—Where the bill of exceptions is signed by the presiding judge within the time allowed, and was lost, and his absence prevented a substantial copy thereof being signed within the time, it could be established in the Supreme Court under the authority of § 3022, Code 1907.

2. **Pleading; Amendment; Demurrer.**—Where additional counts were added to a complaint, and demurrers to the original complaint were not thereafterwards refiled, the demurrers went only to the original complaint, and not to the amended complaint.

3. **Master and Servant; Injury to Servant; Complaint.**—An allegation that complainant was a mine employee of defendant, and was injured while engaged in said employment, sufficiently alleges that plaintiff was injured while in the performance of his duties.

4. **Pleading; Demurrer; Requisites.**—The failure of the complaint to allege that plaintiff was injured while performing his duty is not raised by demurrer asserting that it does not appear that defendant violated any duty owed to plaintiff (§ 5340, Code 1907).

5. **Master and Servant; Injury to Servant; Contributory Negligence.**—Under the evidence in this case it is a question for the jury whether plaintiff was guilty of contributory negligence, it being claimed that he had been warned of the danger of the falling of the rock which injured him.

6. **Same.**—A charge imputing contributory negligence to plaintiff if he failed to examine the rock which fell upon him for warning marks thereon, irrespective of whether there were any such marks upon it, was properly refused.

7. **Same; Existence of Relation.**—Where the mine superintendent supervised plaintiff's work, and defendant furnished him cars, and sprinkled the mine, the evidence sustains recovery based upon the relationship of master and servant, notwithstanding plaintiff was paid for his work by the ton or yard of material moved.

8. **Same; Fellow Servant; Delegation of Duty.**—A mine operator is not liable for failure to maintain the mine in a substantially safe condition when

[Wadsworth Red Ash Coal Co. v. Scott.]

such duty has been delegated to a fellow servant of the injured employee, and there is no proof that such fellow servant was incompetent.

8. **Appeal and Error; Rule 45.**—Where a count charging defendant mine owner with a failure to furnish a safe place to work was improperly submitted to the jury along with other counts, Supreme Court Rule 45 does not have the effect to prevent a reversal.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Andrew Scott against Wadsworth Red Ash Coal Company for damages for injuries suffered while in its employment. Judgment for plaintiff and defendant appeals. Reversed and remanded.

Transferred from Court of Appeals.

PERCY, BENNERS & BURR, for appellant. SAMUEL B. STERN, for appellee.

ON MOTION TO ESTABLISH BILL OF EXCEPTIONS.

GARDNER, J.— (1) The evidence submitted on the motion to establish a bill of exceptions discloses that counsel for appellant presented to the presiding judge a bill of exceptions in this cause within 90 days from the date of the judgment, and that the judge signed the same as presented on that date, to wit, May 16, 1914. Subsequently counsel for appellant had the bill in his office for reference in consulting with counsel for appellee concerning any changes the latter might wish to suggest. While in said office the bill of exceptions was lost. That the bill here sought to be established is a substantial copy of the original bill presented to and indorsed by the presiding judge, and that it is substantially correct, we think is well established by the proof. The presiding judge went abroad before the time had expired for signing the bill, leaving for Europe on July 5, 1914, and returning he landed in Montreal on August 19, and arrived in Birmingham on August 22, 1914. The time for the signing of the bill of exceptions expired August 14th, several days prior to the return of the judge. Counsel for appellant made repeated efforts to get the bill signed before the expiration of the time; and the evidence is without dispute that, so far as it depended on the efforts of said counsel, the bill would have been signed within the proper time had the judge not been out of the country. The motion to estab-

[Wadsworth Red Ash Coal Co. v. Scott.]

lish this bill is rested upon the provisions of section 3022 of the Code of 1907, providing in part as follows:. "If the judge dies, resigns, or is impeached, or his term of office expires, or if for other good cause he does not sign the bill of exceptions * * * within the proper time, the bill of exceptions may be established in the Supreme Court."

It is insisted that the phrase quoted above, "or if for other good cause," suffices to include a case of this character where the presiding judge was absent from the country. We concur in this view, and therefore conclude that the application should be granted. The bill of exceptions is accordingly established.

### ON THE MERITS.

(2) The first question for consideration on the merits of the cause relates to the action of the court in overruling the demurrer to the complaint. The complaint as originally framed contained three counts. It was filed July 11, 1913. On July 30, 1913, a demurrer was filed to the complaint and to each count thereof. Subsequently, on the trial of the cause, the complaint was amended by adding counts 4, 5, 6, 7, 8, A and B. The record does not disclose any demurrer filed to these added counts nor any refiling of demurrers already on file. The judgment entry shows merely that the demurrers to the complaint were overruled. In this state of the record, therefore, we are called upon to consider only the demurrers to the original complaint consisting of three counts.

(3, 4) It is insisted that these counts are defective for the failure to allege that the injuries were received while the plaintiff was engaged in the performance of his duties, and the cases of *South. Ry. Co. v. Bentley,* 1 Ala. App. 359, 56 South. 249; *South. Ry. Co. v. Guyton,* 122 Ala. 240, 25 South. 34, *Sloss-S. S. & I. Co. v. Moore,* 6 Ala. App. 317, 59 South. 211, and *T. C. I. Co. v. Smith,* 171 Ala. 251, 55 South. 170, are cited to support this theory. That portion of the complaint here important reads as follows: "The plaintiff claims of the defendant the sum of $5,000 damage for this: That heretofore, on, to wit, the 20th day of November, 1912, the plaintiff was an employee in the business or service of the defendant in its mines near Fallaston, Ala., and was then and there employed as coal miner for the said defendant. And plaintiff avers that whilst engaged in his said employment of the said defendant a rock fell from the roof of the main entry of the said mines upon the plaintiff."

The only ground of demurrer which appears to be insisted upon as pointing out this supposed defect is indicated in the first assignment of error as follows: "It does not appear that defendant has violated any duty which it owed the plaintiff."

While, under the conclusion we have reached as to the sufficiency of the assignment of demurrer, it is unnecessary to determine as to the sufficiency of the complaint in this respect, yet it is not improper to state (lest we be misunderstood) that we by no means intend to indicate an opinion that the complaint was insufficient in this particular. Rather the contrary view prevails. However, we conclude that the above-quoted assignment of demurrer, in consideration of the language used in the complaint, is too general to be considered as pointing out any defect of the character here insisted upon. Our statute (section 5340, Code 1907) provides that: "No demurrer in pleading can be allowed but to matter of substance, which the party demurring specifies; and no objection can be taken or allowed which is not distinctly stated in the demurrer."

We are of the opinion that the above-quoted assignment of demurrer does not meet the requirements of our statute, and that reversible error could not therefore, in any event, be predicated upon the action of the court in overruling the demurrer to the complaint.

(5) The question treated as of prime importance on this appeal, and one demanding serious consideration, relates to the action of the court in refusing the affirmative charge upon the theory that the plaintiff was shown by the undisputed evidence to have been guilty of contributory negligence. It is insisted that this theory is sustained by the testimony of one Curd, a witness for the plaintiff, whose business is described as that of "rock man" for the company, it being his duty to pull down defective rock when found, Curd testifying that he sounded the rock that fell on the plaintiff a day or two before it fell, and found it "drummy" or defective, and that he told the plaintiff and one Burdette, who was working with plaintiff, of its dangerous condition, and warned them against going under the rock; and it is further insisted that, notwithstanding this warning, plaintiff sat down under the rock to await the sprinkling of the mine, and while thus waiting there the rock fell upon him, inflicting the injuries for which he sues.

[*Wadsworth Red Ash Coal Co. v. Scott.*]

Plaintiff and Burdette were engaged in what is called "driving a heading" in the mine, and at the time of the injury were working at a place between 50 and 75 feet from where the rock fell.  They had worked under the place and measured up to that part of the entry, which work had been accepted by the defendant.  Plaintiff's proof tended to show that after the acceptance of the work by the company he had nothing further to do with the roof of the entry, but that the duty devolved upon the defendant to keep it reasonably safe.  Plaintiff's evidence further tended to show that at the time of the acceptance of this work the rock was not loose, and that in going to and from their work, to get their powder, etc., they had to pass under this entry, that from the place where plaintiff was working they could have seen the rock man if he had come around for inspection, and that the rock man did not in fact inspect the place where this rock fell.  We need not discuss the evidence in further detail.  While the witness Curd does testify that he inspected this rock a day or two before it fell and informed plaintiff and Burdette of its dangerous condition, and while this evidence may not meet with any denial in specific terms, yet other evidence in the case tended to show, or was at least sufficient to afford the jury a reasonable inference, that Curd did not in fact inspect the rock as testified to by him.  The jury could also infer from Curd's testimony that he intended to convey the impression that his information to the plaintiff followed immediately upon his inspection of the rock, but the evidence for plaintiff tended to show that if Curd had inspected the rock, they would have seen him there, and that they did not see him.  The jury had the right to accept or reject this portion of Curd's evidence, and it cannot therefore be said that in the testimony offered there was no room for them to draw an adverse inference on the question of warning as testified to by Curd.

(6) The witness De Lozier, who was mine foreman for the defendant company, testified that he inspected the rock on the morning of the day of the accident, and found it defective, and placed three cross marks on it, a danger signal.  The evidence for plaintiff tends to show that he had no knowledge of any such marking, and that in fact this rock had not been so marked.  We do not think there was any reversible error in refusing the charge asked by the defendant, found on page 33 of the record, and which for convenience we mark No. 4.  The language of the charge would impute contributory negligence to plaintiff upon his

failure to look to see if the rock was marked, notwithstanding the jury might conclude the rock was not marked.

(7) It is also insisted that the defendant was entitled to the affirmative charge as to those counts based on the relationship of master and servant, for the reason that the proof shows that plaintiff was a contractor. This insistence, however, is not well founded. Plaintiff and Burdette were engaged in driving the heading, for which they were paid so much per yard "for the rock they shot out to make the proper height, and so much a ton for the coal they mined." But there was evidence also to show that they were working under the orders of defendant's superintendent, and that plaintiff was subject to be discharged at any time for a failure to carry out the superintendent's instructions, that the work was examined by the superintendent, and that the company furnished the cars and sprinkled the mines. In short, there was evidence tending to show that the defendant had control over "the means and agencies" by which the mining of the coal "in the area of his labors" was carried on.—*Warrior-Pratt Coal Co. v. Shereda,* 183 Ala. 118, 62 South. 721. We are therefore of the conclusion that there was ample evidence to support the verdict rested on the counts of the complaint averring the relationship of master and servant.

(8, 9) Counts 3 and 8 appear to rest for recovery upon the common-law duty of the defendant to furnish plaintiff a reasonably safe place in which to work. But it is insisted that there is no proof that the place originally furnished was unsafe; that the place where the rock fell was made by the plaintiff himself, and that, under the common law, only the duty of maintaining it in a reasonably safe condition rested on defendant; that this duty to so maintain the place had been delegated to a fellow servant of plaintiff; and that there is no proof of incompetency on the part of such servant. And upon such considerations counsel urges that, under the rule established in this state, the affirmative charge was due defendant upon these two counts.—*Tutwiler Coal & I. Co. v. Farrington,* 144 Ala. 157, 39 South. 898; *Whitmore v. Ala. Con. C. & I. Co.,* 164 Ala. 125, 51 South. 397, 137 Am. St. Rep. 31; *Woodward Iron Co. v. Cook,* 124 Ala. 349, 27 South. 455.

The rule as stated in the above-cited authorities is well recognized; and it seems to be conceded by counsel for appellee that the refusal of the affirmative charge on counts 3 and 8 was error, but he insists that it was without injury and should not work a

[Western Railway of Alabama v. Mays.]

reversal of the cause. The writer was first of the opinion that under rule 45 (175 Ala. xx, 61 South. ix) of this court a reversal should not be rested upon this error, and so wrote. On consideration of the case in consultation, however, the other members of the court are of the opinion that this rule is not here applicable or effective to save the cause from reversal. The writer yields to the view of the majority.

For the error indicated in the refusal of the affirmative charge as to the two counts in question, the judgment is reversed.

Reversed and remanded. All the Justices concur.